IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **MARK PETTIBONE,** *et al.*, | Case No. 3:20-cv-1464-YY |
| Plaintiffs, | **OPINION AND ORDER** |
| v. | |
| **JOSEPH R. BIDEN, JR.,** *et al.*, | |
| Defendants. | |

Per A. Ramfjord, Jeremy D. Sacks, Christopher Rifer, Jacob C. Goldberg, Rachel S.D. Gale, Rachel C. Lee, Ryan Tamm, Todd A. Hanchett, Alex Van Ryssellberghe, Dominik Mackinnon, and Kaitlyn K. Lindaman, STOEL RIVES LLP, 760 SW Ninth Avenue, Suite 3000, Portland, OR 97205; Matthew Segal, STOEL RIVES LLP, 500 Capitol Mall, Suite 1600, Sacramento, CA 95814; Kelly K. Simon, ACLU OF OREGON, P.O. Box 40585, Portland, OR 97240. Of Attorneys for Plaintiffs.

Brian M. Boynton, Principal Deputy Assistant Attorney General, Civil Division, Alexander K. Haas, Director, Federal Programs Branch, Brigham J. Bowen, Assistant Director, Federal Programs Branch, and Michael P. Clendenen, Trial Attorney, UNITED STATES DEPARTMENT OF JUSTICE, CIVIL DIVISION, FEDERAL PROGRAMS BRANCH, 1100 L Street, NW, Washington, D.C. 20530. Of Attorneys for Joseph R. Biden, Jr., Alejandro Mayorkas, Gabriel Russell, United States Department of Homeland Security, United States Marshals Service.

Brian M. Boynton, Principal Deputy Assistant Attorney General, Civil Division, James G. Touhey, Jr., Director, Torts Branch, and Lawrence Eiser, Grant Treaster, Sarah Du, Catherine J. Malycke, and Sarah Klein, Trial Attorneys, UNITED STATES DEPARTMENT OF JUSTICE CIVIL DIVISION, TORTS BRANCH, 175 N Street, N.E., Washington, D.C. 20002. Of Attorneys for the United States of America.

Neil J. Evans, NEIL EVANS LAW, P.O. Box 366, Manzanita, OR 97130. Of Attorneys for Individual Defendants, Defendants 1-19.[1]

---

[1] These defendants are not named to preserve their anonymity.

PAGE 1 – OPINION AND ORDER

**Michael H. Simon, District Judge.**

Plaintiffs are eight individuals who were injured during the 2020 protests in Portland, Oregon and two associations of individual Oregonians who participated in the protests.[2] They bring claims against Defendants United States President Joseph R. Biden, Secretary of the Department of Homeland Security Alejandro Mayorkas, Federal Protective Services Regional Director for Region 10 Gabriel Russell, all in their official capacities, the Department of Homeland Security, the United States Marshals Service (collectively, the "Official Defendants"), and the United States.[3]

The Official Defendants filed a motion to dismiss, seeking to dismiss Plaintiffs' Second through Sixth claims. The United States filed a separate motion to dismiss, seeking to dismiss Plaintiffs' Ninth through Eleventh and Thirteenth claims. United States Magistrate Judge Youlee Yim You issued a Findings and Recommendation on January 16, 2024 (F&R1), addressing the

---

[2] The Court references allegations from the Fourth Amended Complaint, even though it was filed after the Findings and Recommendations reviewed in this Opinion and Order, per the agreement of the parties and the order of the U.S. Magistrate Judge in granting leave to amend the complaint, that the underlying motions and the Findings and Recommendations would apply to the Fourth Amended Complaint.

[3] To preserve appellate rights, Plaintiffs also continue to name 19 individual defendants and the Agency heads in their individual capacity, against whom the Court has dismissed claims with prejudice. Plaintiffs also continue to include the *Bivens* claim (Claim 1) that the Court has dismissed with prejudice. The Court notes that the better practice is to no longer reallege defendants and claims in an amended complaint that have been dismissed with prejudice. The Ninth Circuit abolished its previous rule requiring repleading to preserve appellate rights in such circumstances, recognizing that doing so requires district courts to parse old claims and reiterate prior rulings, among other problems. *Lacey v. Maricopa County*, 693 F.3d 896, 925-28 (9th Cir. 2012) (en banc) ("We therefore join our sister circuits and overrule in part the rule found in *Forsyth* and other cases . . . . For claims dismissed with prejudice and without leave to amend, we will not require that they be repled in a subsequent amended complaint to preserve them for appeal."). Thus, if Plaintiffs file another amended complaint, the Court directs that they do not include any defendants or claims that have been dismissed without leave to amend.

Official Defendants' motion. Judge You recommended that the Court grant the Official Defendants' partial motion to dismiss. Judge You also issued a Findings and Recommendation on February 26, 2024 (F&R2), addressing the United States' motion. Judge You recommended that the Court grant the United States' motion to dismiss with respect to Plaintiffs' Tenth and Thirteenth claims, which were conceded by Plaintiffs, and deny the motion with respect to Plaintiffs' Ninth and Eleventh claims.

For F&R1, Plaintiffs timely objected, to which the Official Defendants responded. Plaintiffs partially object to F&R1, challenging only the portions addressing claims Three through Six asserted by Plaintiff Mark Pettibone and his standing to seek expungement of records maintained by the Official Defendants.

For F&R2, the United States timely objected, to which Plaintiffs responded. The United States objects to the portion recommending that the Court deny the motion with respect to Plaintiffs' Ninth and Eleventh claims. The United States argues that the F&R misapplied the law and contends that the Court should grant the United States' partial motion to dismiss in full.

For the reasons that follow, the Court adopts in part both F&R1 and F&R2. The Court adopts F&R1 with respect to the portions to which no party objected, finding no clear error. This includes everything but the Third through Sixth claims asserted by Pettibone, which are discussed below. For this portion, the Court declines to adopt F&R1. The Court finds that Pettibone has Article III standing to seek declaratory and injunctive relief.

The Court adopts F&R2 with respect to the portions to which no party objected, claims Ten and Thirteen, finding no clear error. The Court also adopts F&R2 with respect to Plaintiffs' Ninth and Eleventh claims, except the Court declines to adopt F&R2 for the NIED claims

brought by Plaintiffs Christopher David, Dustin Obermeyer, and Pettibone. For those claims, the

Court grants the United States' motion to dismiss.

## STANDARDS

### A.  Review of Findings and Recommendation

Under the Federal Magistrates Act ("Act"), the Court may "accept, reject, or modify, in

whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C.

§ 636(b)(1). If a party objects to a magistrate judge's findings and recommendations, "the court

shall make a de novo determination of those portions of the report or specified proposed findings

or recommendations to which objection is made." *Id.*; Fed. R. Civ. P. 72(b)(3). For those

portions of a magistrate judge's findings and recommendations to which neither party has

objected, the Act does not prescribe any standard of review. *See Thomas v. Arn*, 474 U.S. 140,

152 (1985) ("There is no indication that Congress, in enacting [the Act], intended to require a

district judge to review a magistrate's report to which no objections are filed."); *United States v.

Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (holding that the court must review

*de novo* magistrate judge's findings and recommendations if objection is made, "but not

otherwise"). Although in the absence of objections no review is required, the Act "does not

preclude further review by the district judge[] *sua sponte* . . . under a *de novo* or any other

standard." *Thomas*, 474 U.S. at 154.

### B.  Motion to Dismiss for Lack of Standing – Rule 12(b)(1)

The U.S. Constitution confers limited authority on the federal courts to hear only active

cases or controversies brought by persons who demonstrate standing. *See Spokeo, Inc. v.

Robins*, 578 U.S. 330, 337-38 (2016); *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90-91 (2013).

Standing "limits the category of litigants empowered to maintain a lawsuit in federal court to

seek redress for a legal wrong." *Spokeo*, 578 U.S. at 338. A plaintiff's standing under Article III

of the U.S. Constitution is a component of subject matter jurisdiction properly challenged under Rule 12(b)(1) of the Federal Rules of Civil Procedure. *Chandler v. State Farm Mut. Auto. Ins.,* 598 F.3d 1115, 1121 (9th Cir. 2010). On a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), it is the burden of the party asserting jurisdiction to establish the existence of subject matter jurisdiction. *Id.* at 1122; *see also Kingman Reef Atoll Invs., LLC v. United States*, 541 F.3d 1189, 1197 (9th Cir. 2008).

A motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction may be either "facial" or "factual." *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial attack on subject matter jurisdiction is based on the assertion that the allegations contained in the complaint are insufficient to invoke federal jurisdiction. *Id.* "A jurisdictional challenge is factual where 'the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction.'" *Pride v. Correa*, 719 F.3d 1130, 1133 n.6 (9th Cir. 2013) (quoting *Safe Air for Everyone*, 373 F.3d at 1039). When a defendant factually challenges the plaintiff's assertion of jurisdiction, a court does not presume the truthfulness of the plaintiff's allegations and may consider evidence extrinsic to the complaint. *See Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012); *Safe Air for Everyone*, 373 F.3d at 1039. A factual challenge "can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency." *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996) (quotation marks omitted).

## C.  Standing to Seek Declaratory Relief

To have standing, a plaintiff must have a "personal interest . . . at the commencement of the litigation." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). The required personal interest must satisfy three elements throughout the litigation: (1) an injury in fact, *i.e.*, an invasion of a legally protected interest that is concrete and

particularized, as well as actual or imminent; (2) a causal connection between the injury-in-fact and the defendant's challenged behavior; and (3) likelihood that the injury-in-fact will be redressed by a favorable ruling. *Id.* at 180-81; *see also Spokeo*, 578 U.S. at 338 (reiterating that the "irreducible constitutional minimum" of standing consists of "an injury in fact . . . fairly traceable to the challenged conduct of the defendant, and . . . likely to be redressed by a favorable judicial decision").

A plaintiff "must show standing with respect to each form of relief sought." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 978 (9th Cir. 2011). "[E]xpungement is a form of prospective relief." *Phillips v. United States*, 2021 WL 2587961, at *8 (C.D. Cal. June 22, 2021). Expungement would require a defendant take future action to destroy records. *Id.*; *see also Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007). When a plaintiff seeks prospective relief, a threat of repeated future injury may suffice to provide standing. *See Nordstrom v. Ryan*, 762 F.3d 903, 911 (9th Cir. 2014). As explained by the Ninth Circuit:

> A plaintiff seeking prospective declaratory relief must demonstrate that he is realistically threatened by a *repetition* of the violation. A threat of repetition can be shown at least two ways. First, a plaintiff may show that the defendant had, at the time of the injury, a written policy, and that the injury stems from that policy. Second, the plaintiff may demonstrate that the harm is part of a pattern of officially sanctioned behavior, violative of the plaintiffs' federal rights.

*Id.* (emphasis in original) (cleaned up). The threat of repeated future injury, however, may not be "conjectural or hypothetical." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) (quotation marks omitted).

**DISCUSSION**

**A.  Motion by the Official Defendants (F&R1)**

The parties' dispute centers on Pettibone's standing to seek expungement for records related to his allegedly unlawful arrest. The Official Defendants rely on *Phillips v. U.S. Customs and Border Protection*, 74 F.4th 986 (9th Cir. 2023), to argue that Pettibone does not have standing to request expungement because the Official Defendants' retention of records does not give rise to a concrete injury. The Official Defendants' reliance on *Phillips* is misplaced because that case is factually distinguishable and because the alleged circumstances of Pettibone's arrest and the Official Defendants' subsequent retention of documents fall within the categories of concrete harm described in *Phillips* as giving rise to Article III standing.

In *Phillips*, the Ninth Circuit provided guidance on the type of harm that constitutes a concrete injury sufficient to seek expungement. *See* 74 F.4th at 992-93. The plaintiffs in *Phillips* alleged that the government "collected and maintain[ed]" records in violation of the plaintiffs' constitutional rights. *Id.* at 990. These records included "names, birthdays, social security numbers, occupations, addresses, social media profiles, and political views and associations," gathered as part of a government surveillance program. *Id.* at 995-96. The Ninth Circuit described that it was "undisputed" that the records were "gathered . . . . us[ing] both open source information available to the public, such as media reports and social media pages, as well as preexisting law enforcement databases, which were not publicly available." *Id.* at 989; *see also id.* at 996 (Schroeder, J., concurring) (explaining that "the information came from publicly available sources or existing law enforcement databases"). Thus, although the plaintiffs in *Phillips* sought "to expunge all records unlawfully collected and maintained about plaintiffs, and any information derived from that unlawfully obtained information," *id.* at 990 (cleaned up), the Ninth Circuit characterized that the information was *not* illegally obtained, *id.* at 989; *see also id.*

at 996 (Schroeder, J., concurring) (explaining that the plaintiffs "do not challenge any governmental conduct in obtaining the underlying information" and could not do so because the information came from public sources or existing law enforcement databases).[4]

The Ninth Circuit in *Phillips*, however, generally discussed standing in the context of "illegally obtained records" and explained:

> Where we have held that the retention of illegally obtained records resulted in a concrete injury, we have always identified something beyond retention alone that resulted in an injury of the sort recognized by the Supreme Court, such as a material risk of future tangible harm, a violation of the common law right to privacy, or a cognizable constitutional violation.

*Phillips*, 74 F.4th at 993; *see also id.* at 992 (identifying harm that "bears a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts" as supporting standing, including "reputational harms" and "intrusion upon seclusion" (quotation marks omitted)).

Here, Pettibone argues that the information *was obtained* in violation of his Fourth Amendment rights because it was obtained *during an unconstitutional detention, search, and seizure*. This distinguishes *Phillips*. Pettibone has alleged a "cognizable constitutional violation." *Id.* at 993. "It is well settled that the federal courts have inherent equitable power to order the expungement of . . . arrest records as an appropriate remedy in the wake of police action in

---

[4] The plaintiffs in *Phillips* claimed "at least one record" at issue "was created using information collected during" an "allegedly unlawful detention" at the U.S.-Mexico border, "which plaintiffs assert violated the Fourth Amendment." 74 F.4th at 992. These plaintiffs, however, did not argue that the underlying constitutional violation should affect the Ninth Circuit's standing analysis. *Id.* at 991 n.4. ("Because plaintiffs claim they have standing due to the government's retention of records alone, they do not argue that the nature of the alleged underlying constitutional violation affects our analysis."). In contrast, Pettibone argues that his allegedly unconstitutional detention, search, and seizure gives rise to a tangible harm for the purposes of standing.

violation of constitutional rights." *Maurer v. Individually & as Members of L.A. Cnty. Sheriff's Dep't*, 691 F.2d 434, 437 (9th Cir. 1982) (quotation marks omitted).

The information retained by the Official Defendants is connected to and associated with Pettibone's allegedly unlawful arrest. Pettibone's last name, date of birth, address, driver's license number, race, height, weight, hair color, and eye color are noted on a record labeled "Arrest #1." ECF 106-8. This record also indicates a charge under "18 U.S.C. § 111" and says "released/no charges." *Id.* Another record shows a photograph of Pettibone next to his full name and states the following information related to his arrest: his "initial offense" was a violation of "18 U.S.C. § 111," he was released without charges, the "AUSA declined prosecution," his "offense type" was a "misdemeanor," and the "arresting agency" was the Federal Protective Service. ECF 272-1. A photograph of Pettibone was taken by an employee of the U.S. Marshal's Service on a personal cell phone. ECF 78 at 2. The contents of Pettibone's backpack were cataloged. ECF 26-1 ¶ 15; 4th Am. Compl. (ECF 309) ¶¶ 295-96.

The Ninth Circuit also has consistently found retention of criminal documents obtained in an unlawful or unconstitutional manner may violate a plaintiff's fundamental rights, including rights to privacy, and support expungement. *See Maurer*, 691 F.2d at 437; *United States v. Smith*, 940 F.2d 395, 396 (9th Cir. 1991); *Mayfield v. United States*, 599 F.3d 964, 970-71 (9th Cir. 2010); *Fazaga v. FBI*, 965 F.3d 1015, 1053-55 (9th Cir. 2020), *rev'd and remanded on other grounds*, 595 U.S. 344 (2022)); *see also Wilson v. Webster*, 467 F.2d 1282, 1283-84 (9th Cir. 1972) (finding that the "continued existence" of arrest records of individuals whose criminal charges had been dismissed "may seriously and unjustifiably serve to impair fundamental rights of the persons to whom they relate"); *Shipp v. Todd*, 568 F.2d 133, 134 (9th Cir. 1978) ("It is

established that the federal courts have inherent power to expunge criminal records when necessary to preserve basic legal rights.").

When the government has unlawfully arrested someone or "engaged in any sort of misconduct," extraordinary circumstances exist that permit a court to order expungement to vindicate substantial rights. *See United States v. Smith*, 940 F.2d 395, 396 (9th Cir. 1991). For example, in *Mayfield*, in considering standing, the Ninth Circuit concluded that the retention of documents that were unlawfully seized from the plaintiff's home as part of his unlawful arrest was an ongoing injury because it "constitute[d] an ongoing violation of [the plaintiff's] constitutional right to privacy." 599 F.3d at 970. In *Maurer*, the Ninth Circuit, in evaluating mootness, reviewed state "police action in violation of constitutional rights," 691 F.2d at 437 (quotation marks omitted), and reversed the district court's dismissal of the claim seeking expungement of the state records involving an arrest "made without either an arrest warrant or probable cause," *id.* at 435.

In *Fazaga*, the Ninth Circuit concluded that a court may vindicate a plaintiff's constitutional rights by ordering expungement of records gathered as part of an illegal surveillance operation. *Fazaga*, 965 F.3d at 1054-55 ("This court has been clear that a determination that records were obtained and retained in violation of the Constitution supports a claim for expungement relief of existing records so obtained."). In *Wilson*, the Ninth Circuit reversed the district court's dismissal of the plaintiffs' request for expungement of state court arrest and other criminal records, remanding for further proceedings. 467 F.7 at 1283. The plaintiffs had alleged that the state law enforcement defendants had arrested the plaintiffs "unlawfully and without any justification." *Id.* The Ninth Circuit concluded that the facts alleged

were sufficient to show ongoing injury and require a "full inquiry." *Id.* at 1283-84. Pettibone alleges similar claims and harms as the plaintiffs in *Mayfield*, *Maurer*, *Fazaga*, and *Wilson*.

Defendants argue that the records related to Pettibone's arrest are "not searchable,"[5] therefore Pettibone cannot show a material risk of future tangible harm. Those records, however, have already been used in ways that harm Pettibone. They provided the basis for communication with a state law enforcement agency to obtain a photo of Pettibone. ECF 71 at 2. Photographs of Pettibone and his driver's license were also found on a Defendant's employee's cell phone (ECF 78 at 2), and they could be disseminated in the future.

Additionally, records of an arrest are unlike the simple identifying records at issue in *Phillips*. An arrest has an inherent negative connotation. *See Wilson*, 467 F.2d at 1283-84 (explaining that the "continued existence" of unlawful arrest records "may seriously and unjustifiably serve to impair fundamental rights of the persons to whom they relate"). The Ninth Circuit has recognized that negative information, even the less prejudicial information of school disciplinary records, is sufficiently harmful to support expungement. *See Flint*, 488 F.3d at 824 ("When a student's record contains negative information derived from allegedly unconstitutional school regulations . . . that information may jeopardize the student's future employment or college career.").

Pettibone describes that he now must report on job applications and similar documents that he has been arrested, even though it was an allegedly unlawful and unconstitutional arrest. If

---

[5] Official Defendants assert that a search in federal arrest record databases does not currently display an arrest record for Pettibone. *See* ECF 128-1 at 2-6 (explaining searches in the nation-wide arrest record databases maintained by the Official Defendants do not return results on Pettibone). Even if there is no formal arrest record in the Official Defendants' searchable databases, Pettibone faces a risk of tangible harm, including reputational harm, for the reasons discussed in this Opinion and Order.

his allegedly false arrest is expunged, he will no longer have to report that he was arrested. *Cf. United States v. Crowell*, 374 F.3d 790, 792 (9th Cir. 2004) (explaining that expungement is the "judicial editing of history" and erases the fact of the conviction or arrest sought to be expunged (quotation marks omitted)); 18 U.S.C. § 3607(c) (establishing that for a particular type of crime for which Congress provided the remedy of expungement, "[a] person concerning whom such an order has been entered shall not be held thereafter under any provision of law to be guilty of perjury, false swearing, or making a false statement by reason of his failure to recite or acknowledge such arrests or institution of criminal proceedings, or the results thereof, in response to an inquiry made of him for any purpose"). This alleged harm is not tied to the searchability of the documents retained by the Official Defendants and further supports Pettibone's standing.

Pettibone was arrested, searched, and detained by federal law enforcement officers allegedly acting without a warrant or probable cause. The records relating to this incident include documentation of Pettibone's arrest, including sensitive identifying information, the charges that were considered, photographs of Pettibone, and an inventory of the contents of his backpack. Pettibone has shown that his records have been used by the federal government and that it is sufficiently likely that he will suffer tangible harm, including reputational harm, if the records are not expunged.

## B. Motion by the United States (F&R2)

The United States objects to the portion of F&R2 in which Judge You recommends that the Court deny the United States' partial motion to dismiss claims Nine and Eleven. The United States makes four arguments in support of its objections, contending that Plaintiffs' claims for battery, assault, intentional infliction of emotional distress ("IIED"), and negligent infliction of emotional distress ("NIED") should be dismissed.

First, the United States objects that Plaintiffs James McNulty, Andre Miller, and Maureen Healy's claims for battery and assault fail because Plaintiffs do not allege sufficient facts to plausibly show that the federal agents acted intentionally to cause harmful contact or an apprehension of harmful contact against these three Plaintiffs. The Court disagrees.

Plaintiffs allege that federal officers shot McNulty four times in the back with rubber bullets and a pepper ball when he was peacefully walking in front of them while moving away from the protests and not on federal property. 4th Am. Compl. ¶¶ 206-07. It is a reasonable inference at this stage of the litigation that the officers intended to cause him harm or the apprehension of harm in shooting him multiple times with less lethal munitions versus generally shooting broadly into a crowd for crowd control and incidentally hitting McNulty.

Plaintiffs allege that federal officers shot Miller in the head with a tear gas canister while he was in a peaceful group of protesters, not on federal property, without warning or giving any instructions or dispersal order. *Id.* ¶¶ 154-55.  The officers allegedly shot into the "crowd." *Id.* ¶ 154. Similarly, Plaintiffs allege that Healy was in a group of peaceful protesters, not on federal property, when federal officers filed flash bangs, impact munitions, and tear gas canisters into the crowd, without warning or giving any instructions or dispersal order. *Id.* ¶¶ 171-72. Healy was hit in the head. *Id.* ¶ 172. At the pleading stage, Plaintiffs' allegations that federal officers fired munitions into a crowd without warning or having given any instructions or dispersal orders, particularly at the level of hitting a person's head, is sufficient to support a reasonable inference that the federal officers intended to cause harmful contact or apprehension of harmful contact.

*Nelson v. City of Davis*, 685 F.3d 867 (9th Cir. 2012), is instructive. Although the Ninth Circuit was evaluating qualified immunity, the court discussed the reasonableness of force used

in the context of responding to a crowd of protesters, particularly given the training of police officers. The Ninth Circuit emphasized that it repeatedly has held that officers may not use force, even the use of pepper spray and bean bag projectiles, when persons simply passively resist (such as refusing to disperse after a dispersal order), without threatening the officers or placing them at risk.[6] *Id.* at 881-82 (gathering cases). The *Nelson* court also explained that police officers were trained not to use pepperballs on persons who were not posing a safety risk and not to create a contamination area that was occupied. *Id.* at 882. The court further noted the importance of the officers giving a warning before engaging in the alleged force. *Id.* Although the *Nelson* court was describing the actions and knowledge of a reasonable officer for purposes of qualified immunity, if a reasonable officer would know that firing these munitions into the crowd was an illegal use of force for purposes of a Fourth Amendment violation and qualified immunity, at this stage of the litigation it is a reasonable inference that they would engage in such knowingly excessive force with the intention to cause harm or the apprehension of harm.

Second, the United States objects that Plaintiffs cannot bring separate IIED and NIED claims because they must instead rely only on their battery and assault claims. The United States relies on the Restatement (Third) of Torts to argue that emotional harm from a physical injury is recoverable from either an intentional tort or negligence, but not IIED or NIED. The United States also argues that Plaintiffs cannot plead these theories in the alternative because the intentional torts alleged by Plaintiffs preclude any possibility of negligence.

Oregon law permits recovery for emotional harm under several different circumstances. *See Philibert v. Kluser*, 360 Or. 698 (2016). These include: (1) when there is physical injury;

---

[6] Here, Plaintiffs do not even allege passive resistance, because they allege that the federal officers engaged in the unlawful force without any warning or dispersal order, while Plaintiffs were engaged in peaceful conduct.

(2) when the tortfeasor acted intentionally; (3) "when a defendant negligently causes foreseeable, serious emotional distress and also infringes some other legally protected interest"; and (4) when a bystander perceives serious bodily injury to a close family member. *Id.* at 702, 711-12. Acting intentionally and physical injury are separate categories recognized in Oregon that support emotional distress damages. Oregon specifically recognizes that NIED claims not only can involve physical injury, but generally must involve physical injury or the apprehension of physical injury. *See Lockett v. Hill*, 182 Or. App. 377, 380 (2002) ("Generally, a person cannot recover for negligent infliction of emotional distress if the person is not also physically injured, threatened with physical injury, or physically impacted by the tortious conduct."). Oregon law also permits plaintiffs to plead IIED as an alternative theory to battery and assault. *See McLean v. Pine Eagle Sch. Dist.*, 194 F. Supp. 3d 1102, 1128 (D. Or. 2016) (permitting plaintiff to seek damages based on IIED and civil assault arising from the same underlying conduct); *A.G. v. Guitron*, 351 Or. 465, 467 n.1 (2011) (noting that plaintiff brought battery, IIED, and negligence claims related to the same conduct). The Court thus rejects this objection by the United States.

Third, the United States objects that Plaintiffs cannot assert NIED claims where their emotional harm was a byproduct of their physical injury because this would erase the distinction between an NIED claim and a claim for negligence. The Court rejects this argument. Plaintiffs may bring a claim for NIED asserting emotional harm caused by the federal officers' negligent conduct that Plaintiffs assert caused them physical harm. *See Lockett*, 182 Or. App. at 380.

Finally, the United States objects that Plaintiff's NIED claims rely on intentional conduct, which cannot support a claim for NIED.[7] The Court partially agrees with the United States.

_____

[7] The United States' first objection was that Plaintiffs Miller, Healy, and McNulty failed sufficiently to allege intentional conduct by federal officers, which is inapposite to the United

As discussed above, Plaintiffs allege that federal officers shot Miller, Healy, and McNulty with less lethal munitions while they were peacefully protesting. Although Plaintiffs' allegations are sufficient at this stage of the litigation to support assault and battery claims, it is not unreasonable for Plaintiffs to plead in the alternative that the officers' conduct was merely negligent. Similarly, Plaintiffs allege that federal officers shot pepperballs and shot or threw a tear gas canister at Plaintiff Nicole Denison when she was peacefully protesting with the "Wall of Moms," without warning or a dispersal order. Fourth Am. Compl. ¶¶ 160-64. Plaintiffs allege that federal officers shot Mac Smiff in the face with a hardcap paintball while he was off to the side of the protesters, marked as "press" and peacefully covering the protests. *Id.* ¶¶ 144-45. Firing projectiles and shooting or hurling tear gas canisters could be done with intent to cause harmful contact or apprehension, or they could be done for general crowd-control purposes, with the striking of and injuries to these plaintiffs the result of negligence. Thus, at this stage, it is reasonable for Plaintiffs to plead these claims in the alternative and the Court overrules the United States' objection with respect to the NIED claims of Plaintiffs Miller, Healy, McNulty, Denison, and Smiff.

Plaintiffs, however, allege that federal officers attacked David after he asked a few officers why they were not honoring their oath to support the U.S. Constitution. *Id.* ¶¶ 180-83. Plaintiffs allege that federal officers "plowed into" David to knock him down, struck him repeatedly with batons, and sprayed him "directly into Mr. David's face" with a chemical irritant. *Id.* ¶¶ 181-83. Plaintiffs allege that federal officers similarly attacked Obermeyer. They allege that while he was standing with his hands up and simply asked if the officers understood

---

States' argument in this objection that Plaintiffs' alleged intentional conduct by federal officers necessarily precludes Plaintiffs' NIED claim.

what an illegal order was, multiple officers hit him with a baton, one struck him, and one sprayed

him in the face with a chemical irritant. *Id.* ¶¶ 197-98. Striking someone with a baton is

intentional conduct and cannot give rise to a claim for negligence. *See Aranda v. City of*

*McMinnville*, 942 F. Supp. 2d 1096, 1110 (D. Or. 2013) (finding that striking someone with "fist

and knees" is intentional conduct not negligence).

Plaintiffs allege that while Pettibone was walking home, federal agents in unmarked

camouflage chased and grabbed Pettibone, refused to explain their actions, forced him into an

unmarked van, physically restrained him, drove him to a new location (which he later learned

was the federal courthouse), searched him, cuffed him, placed him in a holding cell, read him his

*Miranda* rights, and photographed him and his belongings. Fourth Am. Compl. ¶¶ 129-32. Under

Oregon law, "arresting and handcuffing a person [is] intentional conduct that could not support a

negligence claim." *Wagoner v. City of Portland*, 2017 WL 2369399 at *11 (D. Or. May 31,

2017) (citing *Woods v. Gutierrez*, 2012 WL 6203170 at *12 (D. Or. Dec. 12, 2012); *Kasnick v.*

*Cooke*, 116 Or. App. 580, 583 (1992)). Allegations of conduct that can only be intentional cannot

give rise to a negligence claim. *Id.*; *Rodrigues v. Jackson County*, 2015 WL 404577, at *4 (D.

Or. Jan. 29, 2015). Therefore, the United States' objections with respect to the NIED claims of

David, Obermeyer, and Pettibone are well taken.

## CONCLUSION

The Court ADOPTS IN PART Judge You's Findings and Recommendation dated

January 16, 2024 (ECF 283). The Court adopts the F&R except with respect to Pettibone's Third

through Sixth claims seeking expungement. The Court thus GRANTS IN PART and DENIES IN

PART the Official Defendants' Motion to Dismiss (ECF 26). The Court GRANTS the motion

with respect to all remaining claims and DENIES the motion with respect to Pettibone's Third

through Sixth claims. The Court ADOPTS IN PART Judge You's Findings and

PAGE 17 – OPINION AND ORDER

Recommendation dated February 26, 2024 (ECF 287). The Court adopts the F&R, supplemented

herein, except with respect to the NIED claims of Plaintiffs David, Obermeyer, and Pettibone.

The Court thus GRANTS IN PART and DENIES IN PART the United States' Partial Motion to

Dismiss (ECF 256). The Court GRANTS the motion with respect to Plaintiffs David,

Obermeyer, and Pettibone's claims for NIED, without leave to amend at this time, and DENIES

the motion in all other respects.

       **IT IS SO ORDERED**.

       DATED this 7th day of October, 2024.

                  /s/ *Michael H. Simon*
                  Michael H. Simon
                  United States District Judge